# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **RICHARD F. KING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | 1:04CV01179 |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Richard F. King seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying his claim for Disability Insurance Benefits and Supplemental Security Income ("SSI"). The Commissioner's denial decision became final on November 26, 2004, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

### The Claimant

Plaintiff was born on December 9, 1957, and was 42 years of age on his alleged onset date of disability. He has a high school education and past relevant work as a cylinder filler, material handler, furniture mover/driver, circuit board inspector, pre-assembler (printed circuit boards), and foam machine operator. Plaintiff alleges disability as of February 15,

2000, due to back, arm, and shoulder pain; swelling of his feet; headache; arthritis; and hypertension.

## The Administrative Proceedings

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Insurance ("SSI") on May 20, 2002, alleging disability due to back, arm, and shoulder pain; swelling of his feet; headache; arthritis; and hypertension. His claim was denied initially and on reconsideration, and Plaintiff filed a request for a hearing. A hearing was held in Raleigh, North Carolina, on October 17, 2003, before ALJ H. Lloyd King, Jr., and a decision denying benefits was issued on February 26, 2004. Plaintiff filed a request for review, and on November 26, 2004, the Appeals Council found no basis for review of the ALJ's decision. Plaintiff then filed this request for judicial review in a timely manner.

The findings of the ALJ relevant to this review include the following:

1. Plaintiff met the disability insured status requirements of the Social Security Act on February 15, 2000, his alleged onset date of disability, and continued to meet them through February 26, 2004, the date of the ALJ's decision.

2. Plaintiff has not engaged in substantial gainful activity since February 15, 2000, his alleged onset date of disability.

3-4. Plaintiff suffers from "severe" chronic right shoulder pain, hypertension, degenerative disc disease, osteoarthritis, and varicocele, but does not have an

impairment, or combination of impairments, that meets or equals the ones listed in Appendix 1, Subpart P, Regulations Number 4.

5.      Plaintiff's allegations regarding his symptoms and limitations are not totally credible.

6.      Plaintiff retains the residual functional capacity to perform light work, so long as he is limited to occasional pushing and pulling of hand controls; occasional stooping, kneeling, and crouching; no reaching at or above shoulder level; no climbing of ladders, ropes, or scaffolds; and no exposure to hazardous machinery or unprotected heights.

7.      Based on the testimony of a Vocational Expert ("VE"), Plaintiff is able to perform his past relevant work as a circuit board inspector (DOT # 726.684-062), as such is generally performed in the national economy.

8.      Plaintiff was "not disabled," as defined by the Social Security Act, at any time through February 26, 2004, the date of the ALJ's decision.

<u>The Scope of Review</u>

The scope of judicial review by this Court of the Commissioner's decision denying benefits is limited. *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's

findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case *de novo*. *Id.* Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

Discussion

In making a decision on Plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. §§ 404.1520 & 416.920 (2005). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. The burden of persuasion is on the claimant through the fourth step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education and work experience. *Id.*

In this case, the ALJ found that Plaintiff met the disability insured status requirements of the Social Security Act though at least February 26, 2004, the date of the ALJ's decision. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since

-4-

February 15, 2000, his alleged onset date of disability. The ALJ also found at step one of the sequential evaluation that Plaintiff had at least made one unsuccessful work attempt, assisting his neighbor with a lawn mowing business.

Proceeding to steps two and three, the ALJ found that Plaintiff suffers from "severe" chronic right shoulder pain, hypertension, degenerative disc disease, osteoarthritis, and varicocele, but that he does not have an impairment, or combination of impairments, that meets or equals the ones listed in Appendix 1, Subpart P, Regulations Number 4.

At step four of the sequential evaluation, the ALJ found that Plaintiff retains the residual functional capacity to perform light work, so long as he is limited to occasional pushing and pulling of hand controls; occasional stooping, kneeling, and crouching; no reaching at or above shoulder level; no climbing of ladders, ropes, or scaffolds; and no exposure to hazardous machinery or unprotected heights. Thus, the ALJ found, considering the testimony of the VE, that Plaintiff is able to perform his past relevant work as a Circuit Board Inspector (DOT # 726.824-062), as such is performed in the national economy. Accordingly, the ALJ found that Plaintiff was "not disabled," as defined by the Social Security Act, at any time through February 26, 2004, the date of the ALJ's decision.

In this action for judicial review, Plaintiff's first argument before the Court is that the ALJ failed to properly evaluate the Medical Source Statement completed by Dr. Bryon Randolph, one of Plaintiff's treating physicians. (Pleading No. 10, Pl.'s Revised Mem. of Law, at 11-18.) The regulations provide, in pertinent part, as follows:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . If we find that a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . we will give it controlling weight.[1]

20 C.F.R. §§ 404.1527(d)(2) & 416.927 (d)(2) (2005). By negative implication, if a treating source's opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques *or* if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996)(emphasis added).

In determining that Dr. Randolph's opinion was not entitled to controlling weight, the ALJ reasoned that:

> [Dr. Randolph's] opinions concerning [Plaintiff's] disability status involve vocational issues that exceed his area of expertise as a physician. [I] also note[] that [Plaintiff] has seen Dr. Randolph on a sporadic basis during the period in question and that Dr. Randolph's opinions are based upon his clinical diagnoses and without the benefit of imaging studies or functional capacity testing.

(Tr. at 25.) Plaintiff argues that the ALJ's reasoning constitutes reversible error for several reasons.

First, Plaintiff argues that the ALJ's contention that Dr. Randolph's Medical Source Statement completed by Dr. Randolph contains vocational issues exceeding a physician's

---

[1] Under the regulations, the factors to be used in assessing the opinions of a treating physician are as follows: (i) length of the treatment relationship and the frequency of examination; (ii) nature and extent of treatment relationship; (iii) supportability; (iv) consistency; (vi) specialization; and (vii) other factors. 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2) (2005).

-6-

expertise is in error. (Pleading No. 10 at 12-13.) Specifically, Plaintiff asserts that Dr. Randolph does not opine that Plaintiff is "disabled," "unable to do work," "or even whether [the] patient can perform at a particular residual functional capacity, all issues reserved to the Commissioner," and thus does not offer opinions which are inconsistent with his role as treating physician. (Pleading No. 10 at 12-13.)

The Court disagrees with Plaintiff's characterization of Dr. Randolph's opinion. In the first place, the Court notes that the Medical Source Statement is internally inconsistent. *See* Tr. at 271-77. For example, Dr. Randolph states at question 16(A) that Plaintiff needs to rest, "lying down or reclining in a supine position in bed or in an easy chair . . . but a morning break, a lunch period, and an afternoon break scheduled at approximately 2 hour intervals is sufficient." *Id.* at 274. However, at question 16(C), Dr. Randolph states that Plaintiff needs to spend three hours resting, lying down, or in a supine position during an 8-hour work day. *Id.* at 275. Similarly, Dr. Randolph states on question 14(F) that Plaintiff can spend a total of four hours in an 8-hour day sitting, not including time spent standing or walking about. *Id.* at 273. However, on question 17, Dr. Randolph states that Plaintiff can spend a cumulative total of only two hours sitting. *Id.* at 275.

Additionally, the Court notes that, contrary to Plaintiff's assertions, the ALJ does not dismiss the substance of the Medical Sources Statement. Indeed, the ALJ adopts a number of limitations in Plaintiff's residual functional capacity which are consistent with Dr. Randolph's Medical Source Statement. For example, Plaintiff's residual functional capacity contains

limitations on stooping, crouching, and bending; use of hand and arm controls; and lifting, particularly at or above shoulder level, all of which accommodate limitations noted by Dr. Randolph in his Medical Source Statement. *See* Tr. at 271-77.

Finally, contrary to Plaintiff's assertions, Dr. Randolph stated on June 19, 2003, that: "[Plaintiff] suffers from Depression, Arthritis, Hypertension, GERD and Chronic Pain. He is applying for disability. He is disabled in my opinion." (Tr. at 259.) As Plaintiff himself notes, *see* pleading no. 10 at 12-13, while physicians are an important source of "medical opinions,"[2] their opinions as to whether an individual is "disabled" or "unable to work" "can never be entitled to controlling weight or given special significance." Social Security Ruling 96-5p, *Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner* ("SSR 96-5p"). Therefore, to the extent Dr. Randolph opined that Plaintiff is unable work, such opinion is not entitled to special deference.

Plaintiff's next argument on this issue is that the ALJ improperly discounted Dr. Randolph's opinion because Plaintiff sought treatment from Dr. Randolph on a sporadic basis. Specifically, Plaintiff sought treatment from Dr. Randolph five times between July 31, 2002 and July 22, 2003. (Pleading No. 10 at 13-14, *citing* Tr. at 251-54, 258, 267.) The Commissioner maintains that one of these visits was unrelated to Plaintiff's shoulder and back

---

[2] "Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2) (2005) and SSR 96-5p.

-8-

pain. (Pleading No. 8, Memorandum in Support of the Comm'rs Decision, at 6, *citing* Tr. at 251.)

Regardless of the actual number of visits involved, Dr. Kyle E. Black, Jr. is the orthopedist primarily responsible for treating Plaintiff's neck and shoulder pain, while Dr. Randolph is Plaintiff's general practitioner.[3] Therefore, to the extent Plaintiff needed ongoing, regular care for neck and shoulder pain, as well as ongoing physical therapy, he sought such treatment in association with Dr. Black. *See, e.g.,* Tr. at 202-230. Furthermore, this Court has found that Dr. Randolph's medical opinion regarding Plaintiff's physical limitations, in the form of his Medical Source Statement and statement regarding Plaintiff's disability, is not entitled to great weight. Accordingly, the Court finds any error the ALJ may have committed on this point to be harmless.

Plaintiff next argues that the ALJ erred in stating that Dr. Randolph's Medical Source Statement is unsupported by imaging studies and functional capacity testing. (Pleading No. 10 at 14.) Plaintiff specifically references an upper GI series and left shoulder x-ray dated July 22, 2003, an ultrasound revealing a hydrocele and varicocele dated June 19, 2003, and blood chemistry tests dated December 3, 2002. *Id.*, *citing* Tr. at 255-57, 258, 267.

---

[3] "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. §§ 404.1527(d)(5) & 416.927(d)(5) (2005).

The Court finds that the ALJ correctly notes that none of the tests performed by Dr. Randolph *and present in the record for evaluation by the ALJ* constitute the type of *imaging tests* or *functional capacity evaluations* necessary for Dr. Randolph to accurately determine Plaintiff's residual functional capacity. As to the blood chemistry test (which is neither a functional capacity evaluation nor an imaging study), Dr. Randolph's notes do not indicate any particular concerns with Plaintiff's blood work, and the Court's review of these records reveals nothing out of the ordinary except high cholesterol. *See* Tr. at 255-57. Next, Dr. Randolph performed an ultrasound of Plaintiff's scrotal region on June 19, 2003, which revealed a hydrocele and a varicocele. *Id.* at 258. However, Dr. Randolph did not mention these findings on the disability statement he wrote on the same day which included a listing of Plaintiff's purported impairments ("[Plaintiff] suffers from Depression, Arthritis, Hypertension, GERD, and Chronic Pain"), or include any findings in his Medical Source Statement which suggest that Plaintiff's hydrocele and a varicocele cause him any limitations.[4] *See* Tr. at 271-77.

Finally, there was no evidence in the record before the ALJ or the Appeals Council concerning the results of the Plaintiff's upper GI series or his shoulder x-ray, as well as other medical tests, to which Plaintiff alludes, but which were apparently not produced for review by the Appeals Council. This Court is procedurally unable to consider such evidence because

---

[4] The Court does notes, however, that the ALJ listed the varicocele as a "severe" impairment. Therefore, the ALJ was clearly aware of this impairment when developing Plaintiff's residual functional capacity.

Plaintiff has not made a motion to have this case remanded for the consideration of new and additional evidence under sentence six.

Plaintiff's next argument before the Court is that the ALJ erred in stating that:

> In contrast to the paucity of information in Dr. Randolph's report, the consultative examination ("CE") report . . . contains detailed information concerning [Plaintiff's] subjective complaints and objective observations of the examiner indicating that [Plaintiff] has a greater functional capacity than expressed by Dr. Randolph.

(Tr. at 25.) The Court disagrees.

The Consultative Examiner ("CE"), Dr. JoAnne Pizzino, submitted a report which contains gives a detailed history of Plaintiff's medical complaints, and review of Plaintiff's subjective symptoms. *See* Tr. at 238-40. Dr. Pizzino's report also reflects that she performed a thorough physical examination, including a neurologic examination, and determined Plaintiff's range of motion along all axes. *Id*. The CE noted that Plaintiff suffered from chronic shoulder pain, unevaluated back pain, and was probably experiencing the effects of uncontrolled hypertension. *Id*. at 239-40.

Plaintiff goes on to argue that the ALJ compounded his error by crediting the residual functional capacity developed by Dr. Robert Gardner, the state agency physician. Plaintiff contends that Dr. Gardner "cites only narrative lifted from Dr. Pizzino's consultative examination," and that there is "no rationale" to connect Dr. Gardner's conclusion that Plaintiff can perform light work with occasional reaching with the medical evidence of record. (Pleading No. 10 at 16-18.) Plaintiff's argument is without merit.

-11-

Dr. Gardner supports his residual functional capacity assessment with nearly a half page of single-spaced typed references to the record. (Tr. at 250.) Specifically, Dr. Gardner notes Plaintiff's subjective complaints, surgical history, the results of physical examinations performed by treating physicians, and Plaintiff's range of motion and activities of daily living in his narrative. *Id.* Although the medical opinions of treating sources, such as Dr. Randolph, are generally entitled to greater weight than the medical opinions of non-treating sources, such as Dr. Pizzino and Dr. Gardner, Dr. Randolph's opinion in this case is, as discussed above, inconsistent with other substantial medical evidence of record. *See Craig,* 76 F.3d at 590. In making this determination, the Court notes that "[u]ltimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d at 1456. In this case, the Court finds that the ALJ's decision to afford more weight to the opinions of Dr. Pizzino and Dr. Gardner is supported by substantial evidence.

Plaintiff's next argument before the Court is that the ALJ committed reversible error by considering Plaintiff's non-severe impairment of depression separately from his severe impairment of chronic right shoulder pain. Once again, Plaintiff's argument is without merit. As the Commissioner points out, the Regulations require the ALJ to rate the degree of Plaintiff's mental functional limitations separately from Plaintiff's physical functional limitations by describing Plaintiff's limitations in three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), as well as to determine

whether Plaintiff has had any episodes of decompensation. *See* 20 C.F.R. § 404.1520a. The Court is therefore unable to find fault with the ALJ for "separat[ing] [Plaintiff's] depression and dysthmia as 'mental disorders,' apart from considerations of [shoulder] pain, in the first instance." (Pleading No. 10 at 19.) [5]

Plaintiff's final argument is that the ALJ committed reversible error by failing to appropriately evaluate the credibility of Plaintiff's subjective complaints of pain in accordance with 20 C.F.R §§ 404.1529 & 416.929 (2005), because "[a]part from a conclusory finding, without explanation . . . there is no evaluation of the credibility of Plaintiff's testimony." (Pleading No. 10 at 19-20, *citing* Tr. at 26.) The Court finds Plaintiff's argument to be without merit.

The Fourth Circuit has set out a two-step process for evaluating a plaintiff's credibility with regards to his subjective complaints of pain in accordance with the Commissioner's regulations. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996); 20 C.F.R. §§ 404.1529 & 416.929 (2005); *See also* Social Security Ruling 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements* ("SSR 96-7p").

---

[5] Plaintiff argues, without citing to the record, that "Dr. Randolph stated that Plaintiff's depression was a factor important in his pain." (Pleading No. 10 at 18.) However, at Question 10 of the Medical Source Statement, Dr. Randolph states that Plaintiff "seldom" experiences pain "severe enough to interfere with attention and concentration." (Tr. at 272.)

-13-

Under the *Craig* analysis, Plaintiff must first produce objective medical evidence of an impairment which could reasonably be expected to produce the pain he alleges. In this case, Plaintiff must demonstrate that his "severe" chronic right shoulder pain, hypertension, degenerative disc disease, osteoarthritis, and varicocele are medically determinable impairments which could reasonably be expected to produce the pain he alleges. The Court notes that the ALJ failed to make a specific finding at step one of the *Craig* analysis. However, Plaintiff does not argue that this error is prejudicial to his case. Having reviewed the entire record, the Court concurs that no prejudice exists because the ALJ fully explained his decision at step two of the sequential evaluation, which is at issue in this case. Accordingly, the Court will proceed as if the ALJ had found that Plaintiff's impairments could reasonably be expected to produce Plaintiff's symptoms, and will consider the ALJ's analysis at step two of the Craig analysis.[6]

At step two of the *Craig* analysis, the ALJ must evaluate the intensity, persistence and functionally limiting effects of Plaintiff's pain. The Regulations require the ALJ to consider the location, duration, frequency and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness and adverse side effects of any pain medication; treatment, other

---

[6] If the ALJ had found that Plaintiff's impairments could not reasonably be expected to produce Plaintiff's symptoms, then under *Craig*, the ALJ's analysis would stop, and the ALJ would not consider Plaintiff's credibility at step two of the *Craig* analysis. Because the ALJ analyzed Plaintiff's credibility at step two of the *Craig* analysis in this case, the Court can infer that the ALJ's finding was favorable to Plaintiff at step one (i.e., the plaintiff's impairments are capable of producing pain in the amount and degree alleged by the plaintiff.)

than medication, for relief of pain; functional restrictions; and daily activities. 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3) (2005); *see also* SSR 96-7p.

In this case, the ALJ discusses most of the regulatory factors at various points in his opinion. Specifically, the ALJ notes the following in his opinion: that Plaintiff underwent surgery on July 26, 2000, to repair a rotator cuff tear, and subsequently participated in several months of physical therapy; that Plaintiff's physical therapist reported that Plaintiff experienced occasional shoulder discomfort after his assigned range of motion and strengthening exercises, but that Plaintiff did not experience significant pain; that following a Functional Capacity Examination on December 12, 2000, Dr. Robert Wilson, the examining physician, concluded that Plaintiff "definitely ha[s] significant residual strength and could easily pursue vocational rehabilitation"; that Plaintiff told Dr. Pizzino, the CE, that he suffered from pain in both shoulders, both arms, his back, and his feet, as well as headaches; that Plaintiff further told Dr. Pizzino that he had not experienced any improvement in his pain following his surgery; and that Plaintiff testified that he experienced arthritis in his left arm, and pain and popping in his right arm, loss of strength in both arms and osteoarthritis in his back. (Tr. at 21-22.) The ALJ also notes in his opinion that Plaintiff testified that his hypertension was not well-controlled, but that he did not consistently take his medication; that Plaintiff testified that he was unable to bend, sleep on his back, walk 10 minutes without pain, walk without a limp, or wash his neck; that at the time of the hearing, Plaintiff's activities of daily living included cleaning his house, visiting with family members, attending church, and

-15-

"sitting and wondering how he's going to make it," *id.*; and that Plaintiff testified to being able to drive a car. *Id.* at 22.

The Court is mindful that the ALJ's analysis of Plaintiff's credibility is subject to a deferential standard of review.

> The ALJ's determination on the credibility of the plaintiff's testimony regarding pain will be upheld on appeal as long as there is some support in the record for the ALJ's position and it is not patently wrong, since the ALJ is in the best position to observe witnesses and assess their credibility.

*Lewis v. Barnhart,* 201 F. Supp. 2d 918, 935 (N.D.Ind. 2002), *citing Herron v. Shalala,* 19 F.3d 329, 335 (7th Cir. 1994). Accordingly, the Court finds that the ALJ's rationale for his determination that Plaintiff's subjective complaints of pain are "not totally credible" is sufficiently articulated in his opinion and is supported by substantial evidence.

## Conclusion

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for judgment on the pleadings [Pleading No. 5] be denied, that the Commissioner's motion for judgment on the pleadings [Pleading No. 7] be granted, and that the decision of the Commissioner be affirmed.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: February 9, 2006

-16-

Case 1:04-cv-01179-PTS   Document 11   Filed 02/09/06   Page 16 of 16